IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DENISE KAY MORGAN, ) | Case No. 05-40547 |
| ) | |
| Debtor. ) | |
| ) | |
| JEFFREY GAETH, ) | Adversary No. 05-4089 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DENISE KAY MORGAN, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Plaintiff Jeffrey Gaeth filed this proceeding to determine the dischargeability of certain debts awarded to his former spouse, debtor/defendant Denise Kay Morgan, at the time of the dissolution of the parties' marriage. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find the debts to be nondischargeable as to Jeffrey.

FACTUAL BACKGROUND

Denise and Jeffrey were married on July 25, 1992. They separated on March 18, 2004, and on August 13, 2004, the Circuit Court of Jackson County, Missouri (the Circuit Court)

entered the Judgment of Dissolution of Marriage (the Decree). Jeffrey and Denise have three children (Morgan, age 11; Griffin, age 9; and Mason, age 5) with whom they share joint legal and physical custody. They entered into both a Parenting Plan and Property Settlement Agreement (the Agreement), which the Circuit Court incorporated into the Decree. The Decree provided that each party would be responsible for his or her attorney's fees and costs, and that each party waived maintenance in any form. Pursuant to the Agreement, Denise agreed to assume the following joint debts, and hold Jeffrey free of any liability therefrom: (1) Bank of America with an approximate balance of $28,000.00 (2) First Community Bank with an approximate balance of $12,600.00; and (3) Capital One with an approximate balance of $7,000.00. The First Community Bank obligation was secured by two vehicles, a 1999 Dodge Stratus, awarded to Denise, and a 1997 Dodge Caravan, awarded to Jeffrey. The Agreement provided that Denise would receive assets with a value of $248,900.00 and assume liabilities in the amount of $247,847.00. Jeffrey received assets with a value of $213,300.00 and assumed liabilities in the amount of $291,700.00. One of the assets awarded to Denise was a Hartford Individual Retirement Account (the IRA), in the approximate amount of $50,000.00, owned by Jeffrey in his individual capacity. In addition, Jeffrey assigned to Denise 50 percent of a pension he is to receive upon retirement in the total amount of $1340.47 per month. The Agreement also provided that Denise would be allowed to claim the three children as dependents for the years 2004 and 2005. Thereafter, Jeffrey would claim two children and Denise would claim one child in even-numbered years, and Denise would claim two children and Jeffrey would claim one child in odd-numbered years.

On January 31, 2005, Denise filed a Chapter 7 bankruptcy petition. She scheduled the joint debts to Bank of America, First Community Bank, and Capital One as general unsecured debts. Jeffrey filed this timely adversary proceeding objecting to the discharge of those debts. On July 20, 2005, this Court tried the adversary proceeding. At the hearing Denise testified that, while she was unemployed at the time of the Decree, she is now employed by Morgan & Company, an accounting firm owned by her mother, and at the time of trial was earning $2000.00 per month. Jeffrey is self-employed as a Certified Financial Planner and earns $5,557.00 per month.

Jeffrey argues that he transferred the IRA, which is listed as an exempt asset of the Denise's bankruptcy estate, with the understanding that Denise would cash it in and pay the joint debts. Since her income was lower than his, he testified that the taxes owed from cahsing in the IRA would be less if it was in her name. He testified further that he agreed to allow Denise the tax exemptions and any tax credits for all three children for both 2004 and 2005 to offset any tax consequences from cashing in the IRA. Denise testified that she remembers that discussion, but that she never agreed to liquidate the IRA. The Decree and Agreement are both silent as to this issue.

Jeffrey testified that Denise returned the 1999 Dodge Stratus to First Community Bank and did not make the payments as required by the Decree. He stated that First Community Bank threatened to repossess the 1997 Dodge Caravan unless he made the payments. He, therefore, borrowed the sum of $8,000.00 from his parents and satisfied that obligation. He also testified that he borrowed the sum of $6,500.00 from his parents to satisfy

3

a settlement he reached with Capital One after Denise filed her bankruptcy petition. His testimony was the only evidence as to the amount actually paid by him on those obligations. The obligation to Bank of America is still outstanding.

## DISCUSSION

Jeffrey brings this cause of action pursuant to 11 U.S.C. 523(a)(15). As applicable to this case, section 523(a)(15) of the Bankruptcy Code (the Code) excepts from discharge a property settlement obligation if the debtor has the ability to pay the obligation, and if failing to discharge the obligation confers a greater benefit to the plaintiff than a detriment to the debtor if she has to pay it:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, and if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former

4

spouse, or child of the debtor.[1]

By its language, this version of section 523(a)(15) sets up a rebuttable presumption that any property settlement obligation arising from a divorce is nondischargeable.[2] Thus, once a former spouse brings a dischargeability action under section 523(a)(15), and proves the debt arises as part of the property settlement in a dissolution proceeding, the burden of proof shifts to the debtor.[3] In this case, counsel for Denise moved for a directed verdict at the close of Jeffrey's case. I denied that motion since Jeffrey had met his burden of proving that the obligation arose from a property settlement in connection with a dissolution proceeding.

Denise could meet her burden of proof in one of two ways. The first would be to demonstrate an inability to pay the debt from income or property necessary to support herself and her dependents.[4] Denise testified that she was earning $1440.00 per month gross from her employment at the time she filed her bankruptcy petition. Her net monthly income at that time, including child support in the amount of $1500.00, totaled $2,829.84.[5] She scheduled expenses in the amount of $2,940.50.[6] She further testified, on cross-examination, that her

---

[1] 11 U.S.C. § 523(a)(15). Note that for cases filed after October 17, 2005, this provision will be amended to provide that all property settlement obligations are nondischargeable in Chapter 7 cases.

[2] *Becker v. Becker (In re Becker)*, 185 B.R. 567, 569 (Bankr. W.D. Mo. 1995).

[3] *Salerno v. Crawford (In re Crawford)*, 236 B.R. 673, 676 (Bankr. E.D. Ark. 1999); *Florio v. Florio (In re Florio)*, 187 B.R. 654, 656 (Bankr. W.D. Mo. 1995).

[4] 11 U.S.C. § 523(a)(15)(A).

[5] Pl. Ex. # 3.

[6] *Id.*

monthly income from her employment increased to $4000.00 per month two weeks after she filed for bankruptcy relief, and remained at that amount until June 1, 2005, when her mother reduced her income to $2000.00 per month. She also stated that her expenses have increased as well, but she offered no evidence of that. She testified that her parents purchased a 2004 Ford Explorer for her, and she did admit that she and Jeffrey discussed cashing in the IRA to pay off the joint debts. She also admitted that she claimed all three children on her 2004 income tax return, and that she received a tax refund. She denied, however, that she and Jeffrey ever reached agreement on liquidating the IRA. Nonetheless, this Court can consider the IRA in its analysis of Denise's ability to pay. Denise testified that she is the business manager for an accounting firm begun by her father, who is recently deceased. She has a bachelor's degree, and she is taking classes towards a master's degree in accounting, which she anticipates receiving in August of 2006. She is now 37 years old. It seems more than coincidental that her income more than doubled soon after filing for bankruptcy relief, and then decreased again shortly before this trial. This is especially so when her mother apparently makes all salary decisions. I will, therefore, find that Denise is capable of earning $4000.00 per month. That figure is increased by the child support she receives. Even if her expenses have increased by as much as $500.00 per month, she is capable of earning income of more than $2500.00 per month in excess of her scheduled amount. She would, therefore, have more than enough disposable income to pay these debts. In addition, she still has the option of liquidating the IRA and repaying obligations. There was no evidence that Denise reasonably anticipates needing the IRA funds for her retirement. Given her age, the degrees

she anticipates receiving, and the pension that she is to receive under the Agreement, I find that the IRA is not needed to pay the reasonably anticipated expenses of her retirement. For all of these reasons, I find that Denise has the ability to pay this obligation.

Denise could also prevail by proving that discharging the obligation would confer a greater benefit on her than the detriment such discharge would cause to Jeffrey.[7] Jeffrey earns gross monthly income in the amount of $5,557.00 and net monthly income in the amount of $3,969.42.[8] His monthly expenses are $6,042.00, including a payment to his parents and Bank of America in the amount of $910.00. Even if I discount that payment on the premise that he may not currently be paying either of these debts, his undisputed expenses are $5,132.00. I find, therefore, that Jeffrey has no disposable income with which to pay these debts, and Denise does. Thus, discharging the debts would not result in a benefit to Denise that outweighs the detrimental consequences to Jeffrey.

Since Denise has the ability to pay the obligations, and Jeffrey does not, I find that the debts are nondischargeable. I note, however, that the debts are nondischargeable only to the extent that Jeffrey actually pays them.[9] He has already paid the obligation to First Community Bank and Capital One, so a nondischargeable judgment in the amount of $14,500.00 should be entered in favor of Jeffrey. In addition, the obligation to Bank of

---

[7]11 U.S.C. § 523(a)(15)(B).

[8]Pl. Ex. # 4.

[9]*Sturdivant v. Sturdivant (In re Sturdivant)*, 289 B.R. 392, 399 (Bankr. W.D. Ark. 2003) (stating that the obligor spouse indemnifies the obligee spouse in the event the obligee is required to pay).

7

America, in the approximate amount of $29,964.23,[10] is nondischargeable to the extent Jeffrey voluntarily or involuntarily makes any payments thereon.

An Order is accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: August 3, 2005

Copy to: Janice A. Harder
        Joyce B. Kerber

---

[10]Pl. Ex. # 9 (An online balance report as of July 5, 2005).